## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AHMAD WILLIAMS, MALAIKA WILLIAMS, | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | NO.  24-932 |
| | : | |
| MERCEDES-BENZ USA, MERCEDES-BENZ FINANCIAL, DAIMLER TRUST | : | |
| | : | |

## MEMORANDUM

MURPHY, J.                                          February 24, 2025

At the center of the complaint in this case, there is a straightforward dispute about a car lease and a credit report.  But Mr. Williams, representing himself, has tried to turn it into something much bigger.  His complaint alleges an overwhelming variety of claims — fraud, racketeering, consumer protection violations, and more — originating with a simple lease agreement for a corporate car by a company that he created.  Mr. Williams alleges that the defendants wrongly reported him as a co-lessee, harming his credit, and that they failed to fix a defect in the vehicle.  Defendants moved to dismiss the amended complaint under Rules 12(b)(6) and 12(b)(5).  We address each claim below.  Ultimately, we find that one claim survives: Mr. Williams's claim under the FCRA against Mercedes-Benz Financial Services.  Mr. Williams's contract and tort claims stemming from the lease agreement, along with the various consumer protection claims, the obstruction of justice claim, and Mrs. Williams' loss of consortium claim are dismissed with prejudice because the pleadings leave no room for curative amendment.

## I.      Background

In May 2022, Mr. Williams, the founder of Kingson Enterprise LLC ("Kingson"), leased for 36 months a new 2022 Mercedes-Benz E350 4MATIC Sedan from Open Road of Bridgewater, a Mercedes-Benz dealer in New Jersey.  DI 19 at Attach. E.  Mr. Williams asserts

that the sole lessee is Kingson and Mr. Williams initialed the lease only on Kingson's behalf and

that he is not a co-lessee.  *See id.* ¶¶ 3, 7, 74, Attach. E.  The lease was assigned to Daimler Trust

(DT), which became the legal assignee and lessor of the vehicle.  *Id.* ¶ 67; DI 24 at 1 n.1 (DT

merged into Mercedes-Benz Vehicle Trust in January 2023).  Mercedes-Benz Financial (MBFS)

is the servicer of the lease.  DI 19 ¶ 67; DI 24 at 1 n.1.

In June 2022, Mr. Williams was informed that an auto loan was added to his personal

credit reports.  DI 19 ¶ 6.  Mr. Williams challenged the inaccurate reporting with credit reporting

agencies and MBFS multiple times between July 2022 and September 2023, but the credit

reporting agencies and MBFS verified the reporting as accurate each time.  *Id.* ¶¶ 9, 10.

In March 2023, Mr. Williams began experiencing mechanical issues, including

inconsistent braking and intermittent power loss.  *Id.* ¶ 11.  On June 26, 2023, he received an

NHTSA recall notice warning that a fuel pump defect could cause the vehicle to lose power

while driving.  After contacting Mercedes-Benz, he was told that no fix was available due to

supply chain delays and that he would have to wait until parts arrived before it could be fixed.

*Id.* ¶ 12.  Mr. Williams continued to pay for the lease and used the car less often, supplementing

with rental vehicles.  *Id.* ¶ 13.  In November 2023, the vehicle lost power on the highway,

startling him and a client who was also in the car but resulting in no physical injuries.  *Id.*

In December 2023, Mr. Williams learned through a voicemail left by a Mercedes-Benz

employee that a fix for the fuel pump issue had been developed in September 2023.  DI 19 ¶ 14.

In January 2024, Mercedes-Benz of Cherry Hill repaired the car, but Mr. Williams alleges that

the power-loss issue persisted.  DI 19 ¶ 16.  Mercedes-Benz told Mr. Williams that the only

remedy they could offer was a return of the vehicle along with a payoff by Mr. Williams

"equivalent to the remaining 15 months on the lease," which Mr. Williams refused.  DI 19 ¶ 17.

In March 2024, Mr. Williams filed suit against Mercedes-Benz USA, MBFS, and DT, listing himself and Kingson as plaintiffs.  DI 1.  Following a motion to dismiss, we permitted Mr. Williams to amend the complaint, so long as Kingson was not named a plaintiff without counsel (because a business entity must be represented by counsel).  DI 14.  Mr. Williams subsequently filed the operative, amended complaint, removing Kingson as a plaintiff.  DI 19.  The amended complaint adds Malaika Williams as a plaintiff, Mr. Williams's wife, who is also appearing pro se and asserting a loss of consortium claim, derivative of Mr. Williams's claims.  *Id.*  In addition, the complaint lists many causes of action brought by Mr. Williams,[1] which can roughly be placed into four categories:

1. Contract and warranty-based claims:

    a.  Breach of express and implied warranty under the Magnuson-Moss Warranty Act (MMWA) and the Pennsylvania Uniform Commercial Code (UCC);

    b. Breach of the implied covenant of good faith and fair dealing;

    c. Unjust enrichment.

2. Tort-based claims:

    a. Negligence;

    b. Negligent infliction of emotional distress;

    c. Negligent misrepresentation;

    d. Fraudulent misrepresentation;

---

[1] Plaintiffs do not indicate which claims are asserted against which defendants, so we will assume plaintiffs bring their claims against each and all of them.

      e.   Common law fraud;

      f.   Civil conspiracy.

3.   RICO and related fraud claims:

      a.   Racketeer Influenced and Corrupt Organizations Act (RICO);

      b.   Mail and wire fraud;

      c.   Obstruction of justice.

4.   Statutory consumer protection and credit claims:

      a.   Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL);

      b.   Pennsylvania Automobile Lemon Law;

      c.   Fair Credit Reporting Act (FCRA);

      d.   Equal Credit Opportunity Act (ECOA);

      e.   Fair Debt Collection Practices Act (FDCPA);

      f.   Pennsylvania Fair Credit Extension Uniformity Act (FCEUA).

*See* DI 19 ¶ 2.

      In response to the amended complaint, defendants brought a renewed motion to dismiss pursuant to rules 12(b)(5) and 12(b)(6).  DI 24; DI 25.  Defendants make several arguments for dismissal and to move as efficiently as possible, we address the arguments in the following order: (A) the question of standing and privity for the contract-based claims; (B) the application of the economic loss and gist of the action doctrines to the tort-based claims; (C) pleading the RICO-related claims with particularity under rule 9(b); (D) the failure to plead elements of the alleged violations of various consumer protection laws; (E) the FCRA claims; and (F) improper

service of process.  *See* DI 24; DI 25.

## II.    Analysis

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual allegations, accepted as true, to state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the plaintiff pleads factual content allowing the court to reasonably infer that the defendant is liable for the alleged misconduct.  Mere legal conclusions or threadbare recitals of the elements of a cause of action will not suffice. *Twombly*, 550 U.S. at 555.

We construe pro se complaints liberally, but a complaint must still plead specific facts that support a plausible claim.  *See Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) ("[A] litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds pro se.").  A pro se plaintiff may seek leave to amend unless we decide that amendment would be inequitable or futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

### A.    The contract-based claims are dismissed because Mr. Williams has not pled that he is a party to the lease agreement and he cannot assert claims on behalf of Kingson.

Under Pennsylvania law,[2] contractual privity is generally required to assert claims that arise from a contractual relationship.  *Republic Servs. of Pa., LLC v. Caribbean Operators, LLC*, 301 F. Supp. 3d 468, 476 (E.D. Pa. 2018) (*citing Electron Energy Corp. v. Short*, 597 A.2d 175,

---

[2] The parties do not provide a choice-of-law analysis.  As we generally apply the law of the forum state and the parties do not identify any other state interests, we will apply Pennsylvania law.

177 (Pa. Super. Ct. 1991) (holding that only parties to a contract have standing to enforce its terms).  As alleged in the amended complaint, the lease was executed solely by Kingson, not Mr. Williams in his individual capacity.  Because he is not a party to the lease agreement, Mr. Williams cannot personally enforce any contractual rights arising from it.[3]

Further, as an agent of Kingson, Mr. Williams lacks personal privity with the defendants. Under Pennsylvania agency law, an agent who acts on behalf of a disclosed principal is not personally bound by contracts signed on behalf of the principal.  *See Revere Press, Inc. v. Blumberg*, 246 A.2d 407, 409 (Pa. 1968) (holding that an agent is not a party to a contract unless they expressly assume personal liability).  Because Mr. Williams signed the lease agreement only as an agent of Kingson, he does not acquire horizontal privity as a lessee and has no standing to enforce the contract in his personal capacity.  Mr. Williams has not alleged that he assumed personal liability; in fact, he has alleged the opposite.

Mr. Williams's claims for breach of express and implied warranty, whether under the MMWA or the UCC, as well as his claims for breach of the implied covenant of good faith and fair dealing and unjust enrichment fail because he has not pled that he is a party to the lease agreement.  Each of these contract-based claims requires that Mr. Williams be a lessee to have standing, as explained below.  Because only Kingson may assert claims related to the obligations of this contract, Mr. Williams's contract-based claims are dismissed with prejudice as any

---

[3] A third-party beneficiary may recover on a contract if the contract affirmatively expresses an intention to benefit that party or there are "circumstances so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties." *Republic Servs.*, 301 F. Supp. 3d at 476 (quoting *Scarpitti v. Weborg*, 609 A.2d 147, 149 (Pa. 1992)).  Mr. Williams does not claim to be a third-party beneficiary.  And there is no contractual language apparently supporting such a designation.  Accordingly, he cannot rely on third-party beneficiary status to overcome his lack of privity.

amendment would be futile.

### a. Breach of express and implied warranties (MMWA and UCC)

The MMWA provides a federal cause of action for breach of written or implied warranties but does not create independent warranty rights. *See* 15 U.S.C. §§ 2301-12. Instead, MMWA claims are derivative of state law warranty claims. *See Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 254 (3d Cir. 2010) (holding that an MMWA claim is viable only if the plaintiff has a valid state law warranty claim).

For express warranty claims, Pennsylvania law requires that the defendant make an affirmative representation about the goods that formed the basis of the bargain. *See Goodman v. PPG Indus., Inc.*, 849 A.2d 1239, 1243 (Pa. Super. Ct. 2004) ("[E]xpress warranties are specifically negotiated . . . [and] the [lessor] must expressly communicate the terms of the warranty to the [lessee] in such a manner that the [lessee] understands those terms and accepts them."). *Compare*, 13 Pa. Cons. Stat. § 2313 (relied upon in *Goodman*, 849 A.2d at 1243), *with* 13 Pa. Cons. Stat. § 2A210 (identical language but substituting "lessee" for "buyer"). Express warranties arise from direct representations made to the contracting party, and Mr. Williams does not allege that he was personally promised any warranty terms apart from those issued to Kingson as he continuously asserts that he is not a party to the lease. *See* DI 19 ¶¶ 29, 74, 77; *see also Goodman*, 849 A.2d at 1246 ("[T]hird parties may enforce express warranties only under circumstances where an objective fact-finder could reasonably conclude that . . . the party issuing the warranty intends to extend the specific terms of the warranty to the third party . . . ."). Because the lease agreement was executed solely by Kingson, and Mr. Williams has not demonstrated that any express warranty was made to him in his personal capacity, he cannot

assert an express warranty claim.

In contrast, for implied warranty claims, privity is not required under Pennsylvania law. Yet for cases only involving damage to the product itself and no personal injury, horizontal privity is required. *See Salvador v. Atl. Steel Boiler Co.*, 319 A.2d 903, 905, 907-08 (1974) (abolishing vertical and horizontal privity requirements for implied warranty claims in cases involving personal injury, relying on the adoption of section 402A of the Restatement (Second) of Torts (1965), the purposes of UCC section 2-318, and the idea that a manufacturer is the "guarantor of his products' safety" for its holding, but not opining on cases where there is no alleged personal injury or property damage outside of damage to the product itself); *Johnson v. Gen. Motors Corp.*, 349 Pa. Super. 147, 152, 502 A.2d 1317, 1319 (1986), *overruled on other grounds by REM Coal Co. v. Clark Equip. Co.*, 563 A.2d 128 (1989) (horizontal privity is required for implied warranty claims); 13 Pa.C.S.A § 2A216; *see also Israel Phoenix Assur. Co. v. SMS Sutton, Inc.*, 787 F. Supp. 102, 105 (W.D. Pa. 1992) (recognizing and upholding the holding in *Johnson*); *cf. Lupinski v. Heritage Homes, Ltd.*, 535 A.2d 656, 657 (1988) ("[T]he doctrine of products liability was developed primarily so that consumers could be compensated for personal injury and property damage caused by defective products. By comparison, the UCC provides for losses on bargains and related injuries resulting from failure of the product to meet the expectations of the buyer where the seller's express or implied warranties have been breached."). *But see S.N.A., Inc. v. Hartzell Propeller, Inc.*, No. 95-1397, 1996 WL 283646, at *3, *3 n.6 (E.D. Pa. May 29, 1996) (finding that "no privity is required for economic loss claims brought in warranty" but recognizing the holding in *Johnson,* and not recognizing that *Kassab v. Central Soya*, 246 A.2d 848, 852 (Pa. 1968) only applied to vertical privity and that the plaintiffs

in *Spagnol Enters., Inc. v. Digital Equip. Corp.*, 568 A.2d 948, 952 (Pa. Super. 1989) still paid

the defendant for services despite lack of written contract).  Absent personal injury, it makes

little sense to permit a non-purchaser to assert a breach of implied warranty when they have not

provided any consideration to receive its benefits.  *See Jones v. Gen. Motors Corp.*, 631 A.2d

665, 666 (1993) ("[A] manufacturer's warranty as to the quality of its product is a bargained for

condition of sale . . . .").  Thus, where a plaintiff alleges only economic loss or damage to the

product itself, the plaintiff must have purchased or leased the product to assert an implied

warranty claim.

Here, Mr. Williams does not allege any personal injury arising from the leased vehicle.

Mr. Williams claims that he has "physical injuries including shock, rage, grief, humiliation,

trauma, depression, nausea, insomnia, loss of continence, light sensitivity and eye pain (from

headaches) due to Defendant's breach, negligence and fraud." DI 19 ¶ 23.[4]  Mr. Williams does

not allege that his body was physically damaged *by* anything, only that the economic loss

suffered by Kingson has caused him to suffer physical symptoms.  *See* DI 19 ¶ 100 (claiming

injuries are "stress induced"); *Jones*, 631 A.2d at 666 (1993) ("[A]ppellants have made no

allegations of damage outside of the loss of the truck itself."); *Factory Mkt., Inc. v. Schuller Int'l,

Inc.*, 987 F. Supp. 387, 396 (E.D. Pa. 1997) ("Compensation for losses suffered as a result of a

breached agreement 'requires an analysis of damages which were in the contemplation of the

parties at the origination of the agreement . . . .'" (quoting *Auger v. Stouffer Corp.*, No. 93-2529,

---

[4] Mr. Williams mentions an incident where he needed to pull the car to the side of the
highway when the "the vehicle began experiencing power loss." DI 19 ¶ 13.  However, Mr.
Williams does not allege that he was injured when this happened, only that he experienced
"embarrassment" and "frustration."  *Id.*

1993 WL 364622, at *3 (E.D. Pa. Aug. 31, 1993)).  Thus, Mr. Williams must qualify as a

"lessee" under the UCC to assert an implied warranty claim.  *See* 13 Pa. Cons. Stat. § 2A210.

Because Kingson — not Mr. Williams — executed the lease agreement, Kingson is the only

relevant lessee under the UCC.  Therefore, Mr. Williams cannot assert an implied warranty claim

in his personal capacity.

As a pro se litigant, Mr. Williams cannot represent Kingson in federal court.  *See*

*Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201-02 (1993) (corporations must be represented

by counsel).  Because Mr. Williams was not a party to the lease, his personal warranty-based

claims, including those under the UCC and MMWA, must be dismissed with prejudice.

### b.  Breach of the implied covenant of good faith and fair dealing

Pennsylvania law recognizes an implied duty of good faith in the performance of

contracts, but this duty does not create an independent cause of action unless tied to an express

contractual obligation.  *See LSI Title Agency, Inc. v. Evaluation Servs., Inc.*, 951 A.2d 384, 391-

92 (Pa. Super. Ct. 2008) ("[B]reach of the implied covenant of good faith and fair dealing is

subsumed in a breach of contract claim . . . .").  Because Mr. Williams is not a party to the lease,

he cannot claim a breach of good faith and fair dealing.  The implied covenant is designed to

ensure that contractual obligations are carried out fairly; however, it cannot be used to create

contractual obligations where none exist.  This claim is dismissed with prejudice.

### c.  Unjust enrichment

Unjust enrichment applies only where there is no valid contract governing the parties'

relationship.  *See Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. Ct. 1999) ("[W]e may not

make a finding of unjust enrichment, as has the trial court, where a written or express contract

between parties exists.").  Here, because the lease governs the obligations between Kingson and the defendants, and because Mr. Williams himself was not conferred a benefit by defendants outside the obligations in the contract, this claim also fails.  Pennsylvania courts have held that when an express contract exists covering the same subject matter as an unjust enrichment claim, the unjust enrichment claim must be dismissed unless the plaintiff can show that the contract is invalid or unenforceable, which Mr. Williams does not allege.  *See Wilson v. Parker*, 227 A.3d 343, 353 (2020) ("[T]he doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract.").  Accordingly, these claims are dismissed with prejudice.

### B. The tort-based claims and the loss of consortium claim are dismissed because they are solely based on contractual obligations and are barred by the gist of the action doctrine.[5]

Under Pennsylvania law, the gist of the action doctrine and the economic loss doctrine preclude plaintiffs from asserting tort claims that arise from contractual obligations rather than independent legal duties. *See Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (2014) (holding that a claim is barred when the duty breached is created by contract, rather than an independent duty imposed by tort law).  Similarly, the economic loss doctrine bars recovery in tort for purely economic damages that arise from contractual obligations.  *See Team Biondi, LLC v. Navistar, Inc.*, 665 F. Supp. 3d 633, 646 (M.D. Pa. 2023) ("The economic loss doctrine prohibits plaintiffs

---

[5] We note that many of the state and common law claims in the sections below stem from the defendants' alleged false reporting to credit reporting agencies.  These causes of action are all preempted by the FCRA.  *See Roach v. Cap. One Fin. Corp.*, No. 24-6403, 2024 WL 5204183, at *5 (E.D. Pa. Dec. 23, 2024).  However, because Mr. Williams's allegations about credit reporting are often intertwined with allegations about the lease agreement, we found it easier to analyze each cause of action based on their elements rather than through preemption, which would require parsing each cause of action anyway.  *See, e.g.*, DI 19 ¶ 114.

from recovering in tort economic losses to which their entitlement flows only from a contract.").

Here, Mr. Williams asserts claims for negligence, negligent infliction of emotional distress, negligent misrepresentation, fraudulent misrepresentation, and civil conspiracy, all of which arise directly from the lease agreement executed by Kingson. DI 19 ¶¶ 58-67. Although Mr. Williams alleges that he suffered emotional and stress-related injuries, which manifested as physical symptoms, stemming from economic harm caused by defendants, Pennsylvania law does not recognize emotional distress resulting from financial loss as a sufficient basis for bypassing the economic loss doctrine. *See Rice v. Electrolux Home Prods., Inc.*, No. 15-00371, 2015 WL 4545520, at *5 (M.D. Pa. July 28, 2015) ("'[W]here damage occurs to the product itself, such losses are based upon and flow from the purchaser's loss of the benefit of his bargain and his disappointed expectations as to the product he purchased' which is best redressed through warranty law. . . . 'A consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market. He can, however, be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will.'" (quoting *REM Coal*, 563 A.2d at 130)); *Toney v. Chester Cnty. Hosp.*, 36 A.3d 83, 95-99 (Pa. 2011) (noting that negligent infliction of emotional distress claims without a physical injury must be based on the zone of danger, bystander theory, or a pre-existing special relationship involving a recognized duty of care and the foreseeability of severe emotional harm). Mr. Williams's alleged injuries stem entirely from financial damages arising out of the lease agreement and related obligations, making them fundamentally economic in nature, and because these claims are dependent on contractual obligations rather than independent legal duties, they are barred under both doctrines and dismissed with prejudice.

12

### a. Negligence

Mr. Williams' negligence claim alleges that defendants mishandled obligations related to the lease agreement, such as credit reporting and warranty enforcement. DI 19 ¶¶ 58-59 (claiming "negligence in providing a safe and reliable vehicle"). Under Pennsylvania law, negligence claims cannot proceed when they stem from an alleged breach of contractual duties. *See Bruno*, 106 A.3d at 68. Additionally, the economic loss doctrine bars negligence claims that seek purely financial damages unaccompanied by personal injury or property damage. *See Team Biondi*, 665 F. Supp. 3d at 646. Therefore, this claim must be dismissed with prejudice.

### b. Negligent infliction of emotional distress

Mr. Williams's claim for negligent infliction of emotional distress (NIED) is barred by the economic loss doctrine. A claim for negligent infliction of emotional distress must fall within recognized exceptions to the economic loss rule. Specifically, NIED may only arise in "four factual scenarios: (1) situations where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative." *Weiley v. Albert Einstein Medical Center*, 51 A.3d 202 (Pa. Super. Ct. 2012) (quoting *Toney v. Chester Cnty. Hosp.*, 961 A.2d 192, 197-98 (2008), *aff'd*, 36 A.3d 83 (2011)). Mr. Williams's allegations fail to meet any of these criteria. The asserted distress stems from an alleged breach of a contract to which Mr. Williams is not a party, rather than any independent duty of care owed by defendants. Mr. Williams does not allege physical impact, presence in a zone of danger, or witnessing harm to a close relative. Further, there is no fiduciary or special relationship between the parties that would warrant an

exception to the economic loss rule.  Accordingly, Mr. Williams's NIED claim is precluded and dismissed with prejudice.

### c.  Negligent misrepresentation and fraudulent misrepresentation

Mr. Williams alleges that Defendants made misrepresentations regarding the lease agreement and its administration.  DI 19 ¶¶ 61-63.  However, under Pennsylvania law, fraud claims related to contractual performance must be pursued as contract claims, not tort claims, and misrepresentation claims cannot proceed if they relate solely to contractual obligations, unless there was fraud in the inducement. *See eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 19 (Pa. Super. Ct. 2002) (holding that fraud claims that relate solely to contractual performance are barred by the gist of the action doctrine).  Pennsylvania courts only allow misrepresentation and fraud claims to proceed if they involve fraud in the inducement, meaning the defendants must have used misrepresentation, "extraneous to the contract," to induce the Mr. Williams to enter the contract in the first place.  *Team Biondi*, 665 F. Supp. 3d at 645.

Mr. Williams does not allege that defendants fraudulently induced Kingson to enter the lease agreement; rather, his claims are based on subject matter covered by the terms of the contract and defendants' alleged failure to fulfill obligations under the contract.  Because the alleged misrepresentations stem from the contract itself, these claims are barred under the gist of the action doctrine.

### d.  Civil Conspiracy

Pennsylvania does not recognize civil conspiracy as a standalone tort; it requires an underlying actionable tort.  *See Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (1979) (holding that a civil conspiracy claim requires proof of an underlying tort or unlawful act).

Because all underlying tort claims fail, the civil conspiracy claim must also be dismissed with prejudice.

### e.  Mrs. Williams's loss of consortium claim

Loss of consortium is a derivative claim, meaning it can only survive if an underlying tort claim is viable. *See Scattaregia v. Shin Shen Wu*, 495 A.2d 552, 553 (Pa. Super. Ct. 1985) (holding that a loss of consortium claim fails when the underlying tort claim is dismissed). Because all of Mr. Williams's tort claims fail, Mrs. Williams's loss of consortium claim stemming from the above tort allegations is also dismissed with prejudice.

### C.  The RICO-related claims are dismissed because Mr. Williams did not plead mail and wire fraud with particularity under rule 9(b), and there is no private right of action for obstruction of justice claims under 18 U.S.C. § 1503.

Mr. Williams asserts claims under 18 U.S.C. § 1962(c)[6] of the Racketeer Influenced and Corrupt Organizations Act (RICO), alleging predicate acts of mail fraud, wire fraud, and obstruction of justice.  DI 19 ¶¶ 101-18.  "Where mail and wire fraud are alleged as the predicate acts for a RICO violation, they must be pled with particularity to satisfy Federal Rule of Civil Procedure 9(b); in particular, blanket allegations of mail and wire fraud . . . are insufficient to satisfy Rule 9(b)."  *Rapid Cirs., Inc. v. Sun Nat. Bank*, No. 10-6401, 2011 WL 1666919, at *23 (E.D. Pa. May 3, 2011) (citing *Banks v. Wolk*, 918 F.2d 418, 422 n. 1 (3d Cir.1990)).  "[A] plaintiff 'must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation' . . . and 'must allege who

---

[6] Mr. Williams also bases his claims on 18 U.S.C. § 1962(d).  DI 19 ¶¶ 113, 118. However, a violation of subsection (d) is dependent on a violation of subsections (a), (b), or (c) and fails if the substantive claims arising from the other subsections fail.  *Kolar v. Preferred Real Est. Invs., Inc.*, 361 F. App'x 354, 366 (3d Cir. 2010).

made a misrepresentation to whom and the general content of the misrepresentation.'"  *Hlista v. Safeguard Properties, LLC*, 649 F. App'x 217, 221 (3d Cir. 2016) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).

Here, Mr. Williams alleges that MBFS and DT engaged in mail and wire fraud by falsely reporting him as a co-lessee on a vehicle lease and continuing to communicate with credit reporting agencies regarding his alleged financial obligations.  *See* DI 19 ¶ 102; DI 29 ¶ 41. However, his complaint does not identify any specific fraudulent communications — such as the date, sender, recipient, or content of the alleged false statements.  Nor does he establish how any particular communication was intended to deceive or defraud him of money or property, which is a required element of mail and wire fraud under 18 U.S.C. §§ 1341 and 1343.  *See Hlista*, 649 F. App'x at 221-22; *Rapid Cirs.* 2011 WL 1666919, at *23-25.  Moreover, Mr. Williams claims that "continued reporting of fraudulent account . . . impacted his creditworthiness," yet he does not explain how a negative credit report would fraudulently benefit the defendants or why reporting incorrect information would be more advantageous to them than reporting accurate information. DI 19 ¶ 102.  The mere existence of a disputed debt does not, without more, constitute mail or wire fraud.  *See Kolar*, 361 F. App'x at 364 ("[A]llegations set[ing] forth disputes sounding in contract. . . . cannot successfully [be] transmute[d] . . . into RICO claims by simply appending the terms 'false' and 'fraudulent.'").  Without specific factual allegations identifying fraudulent communications, when they occurred, and how they were used to further an unlawful scheme, Mr. Williams' RICO claims predicated on mail and wire fraud cannot satisfy Rule 9(b) and must be dismissed.

Mr. Williams also asserts a claim for obstruction of justice under 18 U.S.C. § 1503,

alleging that MBFS and DT engaged in conduct intended to intimidate and coerce him into dropping his claims.  DI 19 ¶ 111.  Specifically, he argues that after settlement negotiations failed, MBFS revoked his access to its online payment portal, requiring him to pay by phone and incur additional charges.  *Id.*  He characterizes this as an effort to obstruct the due administration of justice and suggests that it constitutes a RICO predicate act.  *See Id.* ¶¶ 112-14.  But there is no private right of action associated with § 1503, so this claim is dismissed with prejudice.  *See Gage v. Wells Fargo Bank, N.A., AS*, 555 F. App'x 148, 151 (3d Cir. 2014) (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283-84 (2002)).

### D.  The FDCPA, UTPCPL, FCEUA, ECOA, and Pennsylvania Automobile Lemon Law claims are dismissed because they are inapplicable to the facts pled in the complaint.

#### a.  FDCPA claim

Mr. Williams alleges that the defendants violated the FDCPA by listing him as a co-lessee or guarantor of the lease to Kingson and blocking access to online account information and their payment portal.  DI 19 ¶¶ 90-93.  "To state a claim under the FDCPA, a plaintiff must allege that '(1) she is a consumer; (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt.'"  *Grooms v. Ally Fin.*, No. 23-2285, 2023 WL 8251315, at *1 (3d Cir. Nov. 29, 2023) (quoting *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015)).

The FDCPA applies exclusively to "debt collectors" as defined by the statute — those who regularly collect debts owed to another or whose principal purpose is debt collection.  15 U.S.C. § 1692a; *see Grooms v. Ally Fin.*, No. 23-2285, 2023 WL 8251315, at *1 (3d Cir. Nov. 29, 2023).  Mr. Williams does not allege facts that demonstrate that any of the defendants are

debt collectors under the FDCPA.  MBFS was a party to the lease agreement and DT was

assigned the lease pursuant to the agreement itself simply making them creditors seeking to

collect debts owed to them based on the lease agreement.[7]  Furthermore, the complaint alleges

no facts that support labeling any of the defendants as debt collectors under the "primary

purpose" rationale.  *See Pressley v. Exeter Fin. Corp*, No. 21-3641, 2022 WL 2905235, at *5

(E.D. Pa. July 22, 2022) ("'Pressley merely alleges that Exeter engages 'in consumer debt

collection activities throughout the United States' and 'regularly attempt[s] to collect debts by

contacting Plaintiff by telephone, U.S. mail, and other instrumentalities of interstate commerce.'

Pressley does not allege facts indicating that Exeter's 'principal' business is debt collection, as

required under the 'principal purpose' definition, or that the debt Exeter seeks to collect is 'due

another,' as required by Henson under the 'regularly collects' definition.").

        In response to the motion to dismiss, Mr. Williams points only to the language of the

standard lease agreement to show that DT assumes responsibility for Mercedes-Benz leases.  DI

29 ¶ 60.   This is not enough to demonstrate that MBFS or DT regularly seek to collect debts for

other entities or that either MBFS or DT's "*raison d'être* is obtaining payment on the debts that

it acquires."  *Barbato v. Greystone All., LLC*, 916 F.3d 260, 267 (3d Cir. 2019); *Pressley*, 2022

WL 2905235, at *5.

        As an alternative reason to dismiss this claim, we note that there is no "debt" alleged as

defined by the statute, and there are no allegations that the defendants violated any provision of

the FDCPA.  A "debt" under the FDCPA must be related to "money, property, insurance, or

services . . . primarily for personal, family, or household purposes . . . ." 15 U.S.C. § 1692a(5);

---

        [7] The complaint does not clearly allege how Mercedes-Benz USA is related to this claim.

*St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351, 360-61 (3d Cir. 2018).  Mr. Williams alleges that the lease was made by Kingson, a business entity, for primarily business purposes as stated in the lease agreement, and that he was not associated with the lease personally.  *See* DI 19 ¶¶ 4, 23, Attach. E.  Moreover, Mr. Williams does not allege violation of any specific "provision of the FDCPA in attempting to collect the debt."  *St. Pierre*, 898 F.3d at 358.  Mr. Williams claims that "Defendants violated the FDCPA by using an unscrupulous act to attempt to collect a debt, aiming to ensure that Plaintiffs would not default or pay late on the monthly payments for the defective vehicle by illegally reporting the account on Plaintiff A.W.'s personal credit report," and that defendants blocked "access to the online account information and payment portal . . . ."  DI 19 ¶¶ 92-93.  We fail to see how "aiming to ensure that Plaintiffs would not default," or how blocking access to the website could be construed as attempting to collect a debt, let alone a violation of the FDCPA.

Because Mr. Williams alleges that the subject lease is a business lease, and both sides interpret the contract as indicating that the lease was for primarily business purposes, this claim is dismissed with prejudice.

### b.  UTPCPL and FCEUA claims

Mr. Williams alleges violations of the UTPCPL, 73 Pa. Stat. and Cons. Stat. Ann. § 201-1 *et seq.*, and the FCEUA, 73 Pa. Stat. and Cons. Stat. Ann. § 2270.1 *et seq.*, which provide relief for deceptive business practices in consumer transactions.  However, these statutes do not apply to commercial transactions.  *Balderston v. Medtronic Sofamor Danek, Inc.*, 285 F.3d 238, 242 (3d Cir. 2002) ("[P]urchases made for business reasons. . . are not actionable [under the UTPCPL.]"); *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 182 (3d Cir. 2015), *abrogated on*

*other grounds by Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466 (2019) ("[Plaintiff] cannot state a claim for relief under the FCEUA if he cannot state a claim for relief under the UTPCPL").

As explained in the previous subsection, the lease in question was executed by Kingson, a business entity, and the lease agreement explicitly states that the vehicle's primary intended use was for "Business, Commercial, or Agricultural Purposes." *See* DI 19 ¶¶ 4, 23, Attach. E. Because this was a commercial lease, the UTPCPL and FCEUA do not apply. Accordingly, these claims are also dismissed with prejudice.

c. **ECOA claim**

Mr. Williams alleges a violation of the ECOA, 15 U.S.C. § 1691 *et seq.*, which prohibits discrimination in against consumers in credit transactions and requires creditors to provide written notice of adverse actions on a credit application. "To establish a prima facie case under ECOA [a plaintiff] must show that (1) plaintiff was a member of a protected class; (2) plaintiff applied for credit from defendants; (3) plaintiff was qualified for the credit; and (4) despite qualification, plaintiff was denied credit." *Anderson v. Wachovia Mortg. Corp.*,621 F.3d 261, 268 n.5 (3d Cir. 2010) (quoting *Chiang v. Veneman*, 385 F.3d 256, 259 (3d Cir. 2004)).

However, Mr. Williams explicitly denies making any credit applications and does not allege that he was ever denied credit. *See* DI 19 ¶ 88-89. Mr. Williams claims that the defendants' report that he was a co-lessee and guarantor on his credit report constituted an adverse action because it was "a change in the terms of an existing credit arrangement." *Id.* (quoting 15 U.S.C. § 1691(d)(6)). However, this does not make Mr. Williams an applicant for credit. Any alleged modification is to a credit arrangement to which Mr. Williams was not a

20

party. *See Dhade v. Huntington Learning Ctrs., Inc.*, 414 F. Supp. 3d 703, 706 (D. Del. 2019)

("The plain language of the ECOA unmistakably provides that a person is an applicant only if

she requests credit." (quoting *Hawkins v. Cmty. Bank of Raymore*, 761 F.3d 937, 941 (8th Cir.

2014))).

The ECOA claim is therefore also dismissed with prejudice as it relates to the lease

agreement because Mr. Williams explicitly denies an element essential to an ECOA claim.

### d. Pennsylvania Lemon Law claim

Mr. Williams also asserts a violation of the Pennsylvania Automobile Lemon Law, 73 Pa.

Stat. and Cons. Stat. Ann. § 1951 *et seq.*, which applies only to "purchasers" of "new motor

vehicles" used for personal, family, or household purposes. Mr. Williams is not a "purchaser"

under the statute because he alleges that he was not a party to the lease. *See* DI 19 ¶¶ 29, 74, 77;

73 Pa. Stat. and Cons. Stat. Ann. § 1952 (defining "purchaser" as "[a] person . . . who has

entered into an agreement or contract for the lease . . . ."). Furthermore, the Pennsylvania

Automobile Lemon Law requires that the "new motor vehicle" be used "primarily for personal,

family, or household purposes." 73 Pa. Stat. and Cons. Stat. Ann. § 1952. Again, the lease at

issue was for primarily business purposes. *See* DI 19 ¶¶ 4, 23, Attach. E. Therefore, this claim

is also dismissed with prejudice.

### E. The FCRA claim survives because Mr. Williams has alleged injuries related to denials of credit that may form a basis for those claims.

Mr. Williams alleges that MBFS and DT[8] inaccurately reported him as a co-lessee on the

---

[8] Again, the complaint does not clearly allege how Mercedes-Benz USA is involved. There are references to defendants generally, but no allegations of reporting by Mercedes-Benz USA specifically.

lease agreement despite his assertion that he did not personally sign as a lessee. *See* DI 19 ¶¶ 74-87. As a result, he claims that his credit profile reflected an incorrect financial obligation, thereby increasing his debt-to-income ratio and negatively affecting his creditworthiness. *See id.* ¶¶ 19, 74, 79, 100. He further alleges that he applied for credit and was denied due to this inaccurate reporting, which resulted in tangible financial harm. *Id.*

The FCRA, 15 U.S.C. § 1681 *et seq.*, regulates consumer credit reporting and imposes obligations on furnishers of credit information, such as banks, lenders, and leasing companies. Under § 1681s-2(b), a furnisher can be held liable only after receiving notice of a dispute from a credit reporting agency ("CRA") and failing to conduct a reasonable investigation. *Harris v. Pa. Higher Educ. Assistance Agency/Am. Educ. Servs.*, 696 F. App'x 87, 90-91 (3d Cir. 2017); *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 358 (3d Cir. 2011). The issue of whether an investigation was reasonable "is normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question." *Seamans v. Temple Univ.*, 744 F.3d 853, 864–65 (3d Cir. 2014) (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 709 (3d Cir. 2010)). A plaintiff must also show a "concrete and particularized" injury to recover under the FCRA. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339-40 (2016), *as revised* (May 24, 2016) (injury "must affect the plaintiff personally" and be "real, and not abstract").

Here, Mr. Williams alleges that MBFS and DT reported to Experian, TransUnion, and Equifax that he was a co-lessee and guarantor of the Kingson lease agreement. *See* DI 19 ¶¶ 23, 70-87, 95, 100. Mr. Williams alleges that he disputed "this account [with] the CRAs over four times and directly with MBFS once," and the "CRAs notif[ied] MBFS of this dispute . . . ." *Id.* ¶ 79. Mr. Williams argues that "MBFS did not reasonably investigate in order to modify the

fraudulent information[, because a] simple look at the lease agreement would have revealed that [Mr. Williams] was not listed as the co-lessee or guarantor[, r]ather he signed as the agent of Kingson."[9] *Id.* ¶ 77. Mr. Williams has also alleged that he was denied credit, was unable to refinance his home, and could not obtain additional auto loans/leases. *Id.* ¶ 79; *see Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1174 (9th Cir. 2009) (finding, at the summary judgment stage, evidence that the plaintiff "was refused credit or offered higher than advertised interest rates . . . [due to] delinquencies on his credit report . . . [was] sufficient to establish causation and damages").

Defendants have therefore not shown that Mr. Williams failed to sufficiently allege an FCRA violation against MBFS.[10] Accordingly, the FCRA claim against MBFS is not dismissed at this stage.

## F. The 12(b)(5) motion is denied because Mr. Williams is pro se, made a good faith effort, and substantially complied with service requirements.

Defendants MBFS and DT alternatively move to dismiss under Federal Rule of Civil Procedure 12(b)(5), asserting insufficient service of process. They argue that plaintiffs improperly served them by mailing the summons and without addressing the mail to the principal office of each corporation. DI 25 at 26-29. Because service was originally attempted in

---

[9] Mr. Williams also asserts that "discovery and deposition will give clarity to this matter." DI 19 ¶ 77. We note that attached to the complaint is a credit application to MBFS that is signed by Mr. Williams as a co-applicant and a guarantor. *See id.* at Attach. F. Defendants have not pointed to this document in their arguments, and there is nothing in the record at this stage indicating that this application was accepted. Although this document suggests that MBFS's reporting was accurate, we will ignore it for now.

[10] Mr. Williams does not allege that DT was notified by a CRA or failed to investigate, so this claim is therefore dismissed as it relates to DT.

23

Michigan, defendants reference Michigan law, which requires personal service on an officer or registered agent. *Id.* at 28-29 (quoting *Mohn v. Huntington Nat'l Bank*, 2017 WL 829786, at *3 (Mich. Ct. App. Mar. 2, 2017)).

However, under Federal Rule 4(h)(1), a corporation may be served either by delivering process to an officer or agent or by following the service laws of the state where the district court is located or where service is made. "Under this Rule, since this Court is located in Pennsylvania . . . service may be made pursuant to Pennsylvania . . . ." *Umansky v. Melton Int'l Tackle, Inc.*, No. 17-4712, 2019 WL 5418050, at *11 (E.D. Pa. Oct. 23, 2019).

Pennsylvania permits service by certified mail, return receipt requested, so long as it is signed for by the defendant or an authorized agent. *See* Pa. R.C.P. 403 ("[A] copy of the process shall be mailed to the defendant by any form of mail requiring a receipt signed by the defendant or his authorized agent. Service is complete upon delivery of the mail."). Here, plaintiffs, proceeding pro se, sent the summons and complaint by certified mail to Defendants' registered agents in Delaware. *See* DI 29 at Ex. A. While it is not clear from the attachments who exactly signed for the mail delivered to defendants' agents in Delaware, defendants do not dispute that they received actual notice and do not argue any prejudice arising from that process.

Pennsylvania law forgives failure to strictly comply with service rules if a defendant has actual notice and is not prejudiced and the plaintiff has made a good-faith effort to effectuate service. *McCreesh v. City of Philadelphia*, 888 A.2d 664, 674 (Pa. 2005). "[A] plaintiff should not be punished 'for technical missteps where he [or she] has suppl[ied] a defendant with actual notice.'" *Umansky*, 2019 WL 5418050, at *11 (quoting *McCreesh*, 888 A.2d at 674).

Defendants do not argue that they did not receive actual notice and do not demonstrate

24

any prejudice resulting from the alleged service defect.  Given Pennsylvania's lenient approach to service rules, the pro se status of the plaintiffs, the fact that certified mail required a signature, and the absence of prejudice, dismissal for this reason is unwarranted.

## III.    Conclusion

For the reasons stated above, only Mr. Williams's claim under the FCRA against MBFS survives.  The contact-based[11] and tort-based claims[12] are dismissed with prejudice.  Mr. Williams' FDCPA, UTPCPL, FCEUA, ECOA, Pennsylvania Automobile Lemon Law, obstruction of justice claims, and Mrs. Williams' loss of consortium claim are also dismissed with prejudice.  As explained in detail with respect to each claim, dismissal with prejudice of those claims is appropriate because the pleadings and related documents (such as the lease agreement itself) make amendment futile.

---

[11] Breach of express and implied warranty under the MMWA and the Pennsylvania UCC; breach of the implied covenant of good faith and fair dealing; unjust enrichment.

[12] Negligence; negligent infliction of emotional distress; negligent misrepresentation; fraudulent misrepresentation; common law fraud; civil conspiracy.